645 A.2d 1377

**Carmen CASTRO, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (ALBERT EINSTEIN MEDICAL CENTER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 3, 1994.

Decided July 18, 1994.

Reargument Denied Sept. 8, 1994.

90

Andrea J. Colton, for petitioner.

Kenneth M. Portner, for respondent.

Before SMITH and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

Claimant Carmen Castro petitions for review of the December 20, 1993 order of the Workers' Compensation Appeal Board which affirmed the Referee's decision to grant Employer Albert Einstein Medical Center's petition to modify or suspend Claimant's workers' compensation benefits. We affirm.

The narrow issued raised- before us is whether a referee may first modify a claimant's benefits based on the wage of a job referral which claimant fails to pursue and then later suspend benefits based on the higher wage of a later job referral.

The following facts are undisputed. On November 14, 1986, Claimant sustained an injury to her left shoulder while in the course and scope of her employment. Employer issued a notice of compensation payable and began total disability payments at a rate of $315.32 per week. On January 20, 1988, Claimant underwent surgery to repair the injury to her left shoulder. On May 16, 1988, Claimant's treating physician released her to return to work but with a lifting restriction of ten pounds for her left shoulder. In July, 1988, Claimant was discharged from the care of her treating physicians.

On January 18, 1989, Employer filed a petition for suspension and/or modification alleging that Claimant had been released by her treating physicians to return to work with restrictions and that appropriate employment was available to Claimant. Claimant denied the allegations in her answer to the petition.

Employer presented the deposition testimony of Sanford H. Davne, M.D. and M. Christy McGarrity, a vocational expert, both of whom were found to be credible by the Referee. Claimant testified on her own behalf and presented the deposition testimony of Dr. Corey Ruth, an orthopedic surgeon.. The Referee did not find Dr. Ruth's testimony to be credible or persuasive. Based on the admitted testimony, Referee Liebau determined that Claimant was capable of returning to work as of June 22, 1989 in a sedentary position with lifting restrictions. He further determined that beginning on July 28, 1989, and over the course of several months thereafter, Claimant was referred to seven full-time jobs that were available within her physical restrictions.[1] The Referee found that

1. The following seven positions were referred to Claimant:
   7/28/89 Ward Clerk, Episcopal Hospital, $8–$9/hour
   7/28/89 Night Clerk, Thomas Jefferson Univ. Hospital, $7–$9/hour
   10/23/89 Customer Service Rep., C & H Medical, $300/week

Claimant failed to follow through in good faith on at least six of the referred jobs.

Based on his findings, Referee Liebau concluded that Employer was entitled to (1) a modification of Claimant's benefits as of July 28, 1989 to a partial disability rate of $75.31; and (2) a suspension of Claimant's wage loss benefits as of November 16, 1989 (the date of the CATCH job referral). The Board affirmed.[2]

On appeal, Claimant does not take issue with Employer's position that the CATCH position, if accepted, would have provided Claimant with an earning power equal to or greater than her pre-injury average weekly wage. Her sole argument is that the Board erred as a matter of law when it affirmed the suspension of her benefits. Claimant submits that her benefits can only be affected as of the availability date of the *first* job for which she failed to apply. Claimant argues that the Referee's "serial" reduction of her benefits according to the salary of later referred jobs is contrary to case law and The Pennsylvania Workers' Compensation Act (Act).[3] We disagree.

We find that the Referee's actions were consistent with the Act and *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

Section 413(a) of the Act provides as follows:

A referee designated by the department may, at any time, modify, reinstate, suspend or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its referee, upon petition filed

10/24/89  Customer Service Rep., Abbey Foster Med. Co. $6–$7/hour
11/06/89  Personnel Coordinator, Staff Builders, $15–$18,000/year
11/16/89  Nurse Therapist, CATCH, $18–$26,000/year
11/20/89  Licensed Practical Nurse, Nutrisystem, $5–$6/hour
Finding of Fact No. 8.

2. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

by either party with the department, upon *proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased,* or that the status of any dependent has changed. *Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased,* or upon which it is shown that the status of any dependent has changed.... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772 (Emphasis added). For purposes of receiving workers' compensation benefits, "disability" is synonymous with a loss of earning power. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.),* 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988).

 The *Kachinski* case sets forth a four-part test to determine whether benefits may be modified because work is available to a previously totally disabled claimant. An employer seeking to modify a claimant's benefits must produce medical evidence of a change in the claimant's condition. The employer must then produce evidence of referrals to jobs actually available to the claimant and within the category of jobs for which claimant has been cleared. It is the claimant's burden of proving that he or she followed through on the referrals in good faith. *Kachinski,* 516 Pa. at 252, 532 A.2d at 380 (1987).

Employer proved that Claimant was capable of returning to a sedentary job. Finding of Fact No. 12. Claimant did not prove that she followed through in good faith on six of the seven jobs referred by Employer. Finding of Fact No. 12. Therefore, Employer was entitled to a modification of Claim-

ant's benefits as of July 28, 1989 when the first job was available.

■ Moreover, Employer was entitled to a suspension of Claimant's workers' compensation benefits as of November 16, 1989, when the CATCH referral was made. A suspension of benefits is appropriate when a disability exists but does not manifest itself in a loss of earning power. *Sule v. Workmen's Compensation Appeal Board (Kraft, Inc.)*, 121 Pa.Commonwealth Ct. 242, 550 A.2d 847 (1988), *petition for allowance of appeal denied*, 522 Pa. 608, 562 A.2d 829 (1989).

In *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), the Pennsylvania Supreme Court recently addressed the issue of economic disability.

> Inasmuch as both capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power), it follows that disability, for compensation purposes, may change from partial to total or vice versa based on a change in one with or without a change in the other. Commonwealth Court correctly recognized this in *Lukens [v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Commonwealth Ct. 479, 568 A.2d 981 (1989) ] when it held that the 'medical evidence of a change in condition' criterion recognized in *Kachinski* applies only when the employer 'seeks to modify a claimant's benefits *on the basis that he has recovered some or all of his ability*,' *Kachinski*, 516 Pa. at 252, 532 A.2d at 380 (emphasis added), and such proof 'is not required when that is not the basis for seeking a decrease in benefits.' *Lukens*, 130 Pa.Commonwealth Ct. at 484, 568 A.2d at 984.

*Dillon*, 536 Pa. at 502, 640 A.2d at 392.

In *Dillon*, a claimant sought modification of his award for partial disability to one for total disability on the basis that no jobs within his physical restrictions were available. The Supreme Court awarded total disability compensation. In doing so, the Court quoted from *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1991):

A 'suspension of benefits' is supported by a finding that the earning power of the claimant is no longer affected by his disability, whether it arises from his employer offering suitable replacement employment, or from the ability of the claimant to secure other suitable employment that provides equal or greater compensation. Should a claimant seek to have a suspension lifted, he is required to demonstrate only that the reasons for the suspension no longer exist.

*Id.* at 32, 584 A.2d at 304.

■ Because Claimant did not follow through on any of the previous jobs referred to her, she was available to pursue the job at CATCH referred to her on November 16, 1989. The wage for that job equalled or exceeded the wage of her pre-injury job. Therefore, her earning capacity had returned to its normal pre-injury level. If Claimant had applied for that job and received an offer, she no longer would have been economically disabled as a result of her injury. Because Claimant acted in bad faith in not pursuing the job, Employer is entitled to a suspension of her benefits.

Claimant cites *Associated Plumbing and Heating v. Workmen's Compensation Appeal Board (Hartzog)*, 126 Pa.Commonwealth Ct. 618, 560 A.2d 865 (1989) for the proposition that the modification of a claimant's benefits must be effectuated as of the date of the first available job for which claimant did not apply. That analysis is incorrect. We stated in *Associated Plumbing* that a modification of a claimant's benefits "must be *effective* as of the date the first job he did not apply for was available." *Id.* at 626, 560 A.2d at 869 (Emphasis added). Further, in choosing between two jobs available to the claimant on the same day to determine the modification of benefits, we chose the lower paying job in that case because the position happened to be "generally representative of the type of job referrals Claimant was receiving from Employer." *Id.*

Nothing in *Associated Plumbing* prevents a referee from modifying a claimant's benefits effective as of the date the first job not applied for was available and then suspending

benefits as of the date a later-referred job which paid a wage equal to or greater than a claimant's pre-injury wage became available. To hold otherwise, would defeat the legislative purpose under Section 413(a) of permitting "modification, reinstatement, suspension, or termination ... as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased...."

In *Kurtiak v. Workmen's Compensation Appeal Board (Western Sizzlin' Steak House)*, 160 Pa.Commonwealth Ct. 637, 635 A.2d 732 (1993), we stated that "[p]artial disability payments are calculated based upon the difference between the wages the employee earned at the time of the injury and the employee's *earning power* after the injury. 77 P.S. § 512." *Id.* at 645, 635 A.2d at 736 (Emphasis added). The referee in *Kurtiak* had based the modification of the claimant's benefits on a part-time position when a full-time position had been referred as well. However, there we determined that the wage of the full-time position should have been used because it more accurately reflected the claimant's earning capacity. Likewise, in the case here, the position at CATCH, which was referred on November 16, 1989, accurately reflected Claimant's earning capacity on that specific date.

Claimant makes much of the humanitarian objectives of the Act. The Supreme Court in *Kachinski* stated that "the viability of this system depends on the good faith of the participants." *Id.* 516 Pa. at 252, 532 A.2d at 380. Here, however, Employer was the one who acted in good faith in referring Claimant to seven available positions within her physical limitations. Claimant herself did not act in good faith and failed to pursue at least six of those seven positions. At least one of those positions would have returned her to her pre-injury wage level. Allowing Claimant to ignore all the jobs referred to her by Employer and only sanctioning Claimant with a modification based on the wage of the first job she ignored would penalize Employer and reward Claimant for her bad faith. We do not believe that suspending Claimant's

benefits under these facts compromises the humanitarian objectives of the Act.

For the reasons stated above, we affirm the order of the Board.

SMITH, J., dissents.

## *ORDER*

**AND NOW,** this 18th day of July, 1994, the order of the Workers' Compensation Appeal Board dated December 20, 1993 at No. A92–1646 is hereby affirmed.